**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES S. THOMPSON, | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 09-1416 |
| | ) | |
| v. | ) | Chief Magistrate Judge Lenihan |
| | ) | |
| NORMAN HOWARD, ROY | ) | |
| MEHALIK, TROOPER | ) | |
| BROADWATER, | ) | ECF Nos. 73, 75, 79 |
| | ) | |
| Defendants. | | |

## MEMORANDUM OPINION

Presently before the Court are the Motions to Dismiss filed by Defendant Pennsylvania State Trooper Broadwater ("Broadwater") at ECF No. 73, Defendant Officer Roy Mehalik ("Mehalik") at ECF No. 75, and the partial Motion to Dismiss filed by Defendant Officer Norman Howard ("Howard") at ECF No. 79 (collectively "Defendants"). The Motions to Dismiss will be granted except for Mehalik's motion as it relates to Plaintiff's claim for excessive force relating to those events after Mehalik arrived on the scene.

## FACTUAL AVERRMENTS

Plaintiff, James S. Thompson ("Plaintiff" or "Thompson"), proceeding pro se, avers the following in his Amended Complaint at ECF No. 65. Around March 2008, Plaintiff became the victim of excessive force, false arrest, malicious prosecution, fabrication of false evidence, conspiracy and "cruel punishment." (ECF No. 65 at 1.) Plaintiff avers that he was riding in a car driven by Rae Lynn Sigwalt ("Sigwalt"), when they were stopped by Officer Howard. Howard asked for Sigwalt's identification. (ECF No. 65 at 2.) Howard ran a background check on

Sigwalt in his police car and determined that she had an outstanding warrant. (ECF No. 65 at 2.) Howard returned to the driver's side of the car and placed Sigwalt into custody. (ECF No. 65 at 2.) Upon placing Sigwalt into the police car, Plaintiff avers that Howard made the following remark: "What's a pretty white woman like you doing with a nigger?" (ECF No. 65 at 2.)

Officer Howard then approached the passenger side of the vehicle and told Plaintiff to step out of the vehicle. (ECF No. 65 at 3.) Plaintiff avers that Howard patted him down and found nothing. Howard asked Plaintiff if he had any outstanding warrants and Plaintiff replied that he did not. Howard told Plaintiff that he was going to run a warrants check on Plaintiff, and that if no warrants were found, Howard would let Plaintiff go. Howard's check revealed no outstanding warrants. (ECF No. 65 at 3.)

Just before returning to Plaintiff, Howard received a radio call from Defendant Officer Mehalik who told Howard that Plaintiff was dangerous and to be careful. (ECF No. 65 at 3.) Howard then told Plaintiff that he was going to place handcuffs on him. (ECF No. 65 at 3.) When Plaintiff inquired with Howard as to why he was being cuffed, Howard simply responded that "I want to." (ECF No. 65 at 4.) Plaintiff protested, telling Howard that he had no right to handcuff him. Plaintiff avers that Howard told him that if Plaintiff did not go into cuffs, that Howard would tase him. (ECF No. 65 at 4.) Plaintiff avers that at this point, Howard's actions amounted to a Fourth Amendment false arrest violation. (ECF No. 65 at 4-5.)

Plaintiff alleges that Howard became frustrated with Plaintiff and told Plaintiff he was going to tase him. Plaintiff warned Howard that he had heart and lung disease and that a taser would probably kill him. Plaintiff alleges that Howard then attempted to tase him but was unable to do so after two attempts. Plaintiff then avers that Howard became very angry, pulled out his baton and began beating him, while shouting the following: "Get the f___ down you

f_____ nigger.  Get the f___ down or I'll kill you you f_____ nigger.  Get the f___ down you f_____ nigger.  You f_____ black bastard."  (ECF No. 65 at 5-6.)  Plaintiff concludes that he was afraid for his life and afraid that Officer Mehalik, his childhood menace, would arrive on the scene.  (ECF No. 65 at 6.)

Next, Plaintiff avers that he has "an agonizing morbid fear of Officer Mehalik steming[sic] from childhood torment and terror."  (ECF No. 65 at 6.)  Plaintiff avers in great detail facts from his childhood that precipitated his "agonizing morbid fear of Officer Mehalik." (ECF No. 65 at 6-8.)  Plaintiff states that because of these childhood experiences with Mehalik, Plaintiff suffers from Post-Traumatic Stress Disorder.  (ECF No. 65 at 8.)  Plaintiff continues that because of this agonizing morbid fear of Mehalik, Plaintiff felt he had to flee in order to save his own life "from two racist policemen with a reputation for having racist attitudes and conduct for brutality."  (ECF No. 65 at 8.)  Plaintiff continues that he then jumped back into the car to flee.  At this point, Howard approached the driver's side door and smashed out the driver's side window.  Plaintiff avers that the glass hit him in the face, blinded him momentarily, as he ducked toward the passenger side of the car to avoid being hit in the face by the police baton.  (ECF No. 65 at 9.)  Plaintiff alleges that he started the car from this "ducked" position and drove away.  He avers that he could not see what was in front of him as he drove away because he was afraid of being shot.  He heard something hit the driver's side of the car but never saw "what hit [him]." (ECF No. 65 at 9.)

Plaintiff continues that as he drove away "a sudden barrage of gunfire hit the car . . . ." (ECF No. 65 at 10.)  Plaintiff alleges that Mehalik and Howard shot at the car.  According to Plaintiff, the car, at that point, was in a densely populated area and Mehalik and Howard nearly shot a woman in the head in her home nearby.  Plaintiff also avers that he was unarmed.  Plaintiff

states that this behavior by Mehalik and Howard violated the Eighth Amendment as to himself and the woman Mehalik and Howard almost shot.  Plaintiff continues that this conduct also violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.  (ECF No. 65 at 10.)

With regard to Trooper Broadwater and Officer Howard, Plaintiff states that it his theory that Broadwater and Howard conspired "to create inflammatoy[sic] news releases that had the possibility to incite uncontroled[sic] rage in other police and so-called vigilantes desiring to help police capture or kill a wanna-be cop killer."  (ECF No. 65 at 11.)  This rage was precipitated by the actions of Broadwater and Howard when, after consulting with one another, "they both released false or fabricated news releases."  (ECF No. 65 at 11.)  The false news release issued by Howard indicated that Plaintiff was armed and fired shots at police.  (ECF No. 65-2.)  The false news release issued by Broadwater indicated that Plaintiff had a previous homicide conviction.  (ECF No. 65-3.)  Plaintiff avers that contrary to the news releases attached to the Amended Complaint, Plaintiff shot at no one.  Plaintiff states that he "never had a gun to do anything except to flee in self-defense to save my life."  (ECF No. 65 at 11.)  Further, Plaintiff avers that he has never had a previous homicide conviction.  (ECF No. 65 at 11.)  Plaintiff continues that these false news releases created "hysteria that generated overwhelming fear" in Plaintiff and violated the Eighth Amendment against cruel and unusual punishment.  Plaintiff also avers that this conduct by Broadwater and Howard violated the Fifth and Fourteenth Amendments.  Plaintiff continues that Broadwater and Howard knew from the very beginning of the investigation that Plaintiff never shot at Howard or any police, and that Plaintiff had no previous homicide convictions.  (ECF No. 65 at 12.)  In support of his conspiracy theory,

Plaintiff notes that the press releases came out within one day of each other, evidencing a concerted effort on the part of Broadwater and Howard. (ECF No. 65 at 13.)

In his prayer for relief, Plaintiff seeks a declaration that Defendants violated his constitutional rights, compensatory damages of $100,000, and punitive damages in the amount of $200,000. (ECF No. 65 at 14.)

Finally, attached to Plaintiff's Amended Complaint is the October 2, 2009 Order of Judge Steve P. Leskinen of the Court of Common Pleas of Fayette County, Pennsylvania, Criminal Division. (ECF No. 65-1 at 1.) Judge Leskinen indicated that Plaintiff, the criminal defendant in state court, was charged with resisting arrest, aggravated assault, and criminal mischief. (ECF No. 65-1 at 1.) Judge Leskinen ordered that the resisting arrest charge be dismissed because Howard's attempt to handcuff Plaintiff was not a lawful arrest. The charges of aggravated assault, and criminal mischief, however, were not dismissed by Judge Leskinen because Plaintiff placed Officer Mehalik in danger of serious bodily injury or death, and because the vehicle Plaintiff was driving caused approximately $1,000.00 in damage to the police vehicle. (ECF No. 65-1 at 4.) Judge Leskinen determined that Plaintiff was not privileged to remove Sigwalt's vehicle from the scene, because Sigwalt had been stopped pursuant to a lawful warrant and the arresting officer had not yet had the opportunity to perform a lawful search of the passenger compartment of the vehicle. (ECF No. 65-1 at 3.) Judge Leskinen also found that Plaintiff "intentionally drove the car directly into the side of [Mehalik's] patrol vehicle, another action he was not privileged to do . . . ." (ECF No. 65-1 at 3.)

After a jury trial, Plaintiff was found guilty of 1 count of aggravated assault, 1 count of simple assault, and 1 count of criminal mischief. (State Court Docket No. CP-26-CR-0000527-2008, ECF No. 80-1; ECF No. 65 at 4 n.1.) Plaintiff avers that he is undertaking an appeal of

these convictions. (ECF No. 65 at 4 n.1); *see also* State Court Docket No. CP-26-CR-0000527-2008 at 19 (Plaintiff filed Post-Conviction Relief Act ("PCRA") Petition on July 5, 2011). It appears from the state court docket sheet that Plaintiff's PCRA Petition is pending.

LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

In *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations
> will no longer survive a motion to dismiss: "threadbare recitals of
> the elements of a cause of action, supported by mere conclusory
> statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent
> dismissal, all civil complaints must now set out "sufficient factual
> matter" to show that the claim is facially plausible. This then
> "allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged." *Id.* at 1948. The
> Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must
> show that the allegations of his or her complaints are plausible. *See
> Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler,* 578 F.3d at 210.

Thereafter, In light of *Iqbal*, the United States Court of Appeals for the Third Circuit in

*Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009)*,* set forth the following two-prong test

to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. [*Iqbal,*129
> S. Ct. at 1949]. Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show
> that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an
> entitlement with its facts. *See Phillips,* 515 F.3d at 234-35. As the
> Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts
> do not permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not 'show [n]'-
> 'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949.
> This "plausibility" determination will be "a context-specific task
> that requires the reviewing court to draw on its judicial experience
> and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

Courts generally consider only the allegations of the complaint, the attached exhibits, and

matters of public record in deciding motions to dismiss. *Pension Benefit Guar. v. White Consol.*

*Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described

or identified in the complaint may also be weighed if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). A district court may consult those documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, the Court must liberally construe the factual allegations of Plaintiff's complaints because pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, Federal Rule of Civil Procedure 8(e) requires that all pleadings be construed "so as to do justice." Fed. R. Civ. P. 8(e).


ANALYSIS

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

<u>False Police Reports and Conspiracy to File False Police Reports</u>

In support of their Motions to Dismiss, Defendants Broadwater and Howard argue that there is no constitutional right to a correct police report, and no constitutional violation resulted from the allegedly false reports.  (ECF No. 74 at 3-4; ECF No. 80 at 9-10.)  Plaintiff responds that the false statements in the police reports amount to malicious prosecution, and Plaintiff was harmed thereby because he suffered severe emotional distress as a result of the false police reports.  (ECF No. 82 at 1-3.)

First, the law is clear that there is no constitutional right to a correct police report.  *Jarrett v. Twp. Of Bensalem*, 312 Fed. Appx. 505, 507 (3d Cir. 2009); *Bush v. City of Philadelphia*, No. Civ. A. 98-0994, 1999 WL 554585, at *4 (E.D. Pa. July 15, 1999) (surveying cases and finding no civil rights violation for filing of false police reports in absence of some evidence that plaintiff was actually harmed by false reports).  *See also Landrigan v. City of Warwick*, 628 F.2d 736, 744-45 (1st Cir. 1980) (mere existence of false police report does not state cognizable constitutional injury).

Plaintiff avers that as a result of the false police reports, he suffered severe anguish and overwhelming fear, and that the false reports were meant to create wide spread hysteria among other police because the reports falsely indicated that Plaintiff was a "wanna be cop killer and former killer."  (ECF No. 65 at 12.)  Plaintiff's claim, however, fails as a matter of law.  "Defamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution."  *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing *Paul v. Davis*,

424 U.S. 693, 701-12 (1976)); *see also Sturm v. Clark*, 835 F.2d 1009, 1012 (3d Cir. 1987)

("Absent the alteration or extinguishment of a more tangible interest, injury to reputation is

actionable only under state defamation law.") (internal citations omitted). Here, Plaintiff avers

only that he suffered severe emotional distress and fear that the false reports would create "wide

spread hysteria among other police[,] news media and the surrounding public." (ECF No. 65 at

12.) Plaintiff does not attempt to aver that he was denied a "liberty" or "property" interest

protected by the Due Process Clause of the Fourteenth Amendment as a result of the false police

reports. *See Paul*, 424 U.S. at 712. Further, the facts and circumstances giving rise to Plaintiff's

excessive force claim occurred before Broadwater and Howard allegedly filed the false police

reports. That is, Plaintiff's excessive force claim is not related in any way to the issuance of the

reports.

Likewise, although Plaintiff may recover damages for emotional distress pursuant to §

1983, Plaintiff "must first show an underlying violation of his constitutional rights in order to

recover emotional distress damages . . . ." *Bush*, 1999 WL 554585, at *7. Hence, because there

is no cognizable constitutional claim for filing a false police report, *Jarrett*, 312 Fed. Appx. at

507, Plaintiff may not recover damages for emotional distress sustained as a result of the filing of

a false police report. *See Bush*, 1999 WL 554585, at *7. Therefore, Plaintiff's claim for the

issuance of false police reports will be dismissed as a matter of law. Any attempt to amend the

Complaint would be futile as a matter of law.[1]

Finally, because Plaintiff is unable to make out a claim against Broadwater and Howard

for filing false police reports, Plaintiff's claim against Broadwater and Howard for conspiracy to

---

[1] The United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a
district court is dismissing a claim pursuant to Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must *sua sponte*
"permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d
Cir. 2008).

file false police reports must also fail as a matter of law. That is, there can be no § 1983 conspiracy claim without an underlying constitutional violation. *White v. Brown*, 408 F. App'x 595, 599 (3d Cir. 2010). Therefore, Plaintiff's claims against Broadwater and Howard for conspiracy to file false police reports will be dismissed. Likewise, any attempt to amend would be futile as a matter of law.

False arrest

In support of his Motion to Dismiss the Amended Complaint as it relates to Plaintiff's claim of false arrest, Howard advances several arguments. First, Howard argues that Plaintiff's claim for false arrest should be dismissed with prejudice because probable cause for Plaintiff's arrest is conclusively established by his conviction of several of the offenses with which he was charged.[2] Howard, on supplemental brief, also argues that he is protected by qualified immunity because his actions in handcuffing Plaintiff after receiving the radio warning from Mehalik that Plaintiff was dangerous was not unreasonable, incompetent, or a violation of a clearly established right under the circumstances. Plaintiff responds that when Howard attempted to place handcuffs on him, Howard's actions amounted to a false arrest. In support of this assertion, Plaintiff directs the Court to the October 2, 2009 Order of Judge Leskinen. In his response to Howard's supplemental brief, Plaintiff also argues that Plaintiff is not protected by qualified immunity for those claims brought against him in his personal capacity.

The Fourth Amendment's prohibition against unreasonable seizures protects individuals from arrest without probable cause. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972)). "Probable

---

[2] The Court agrees with Defendant Mehalik that Plaintiff avers no facts to suggest that Mehalik was involved in the events giving rise to Plaintiff's claim for false arrest. (ECF No. 76 at 15.)

cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  The law of the state where the arrest occurred controls whether the arrest is valid.  *Myers*, 308 F.3d at 255 (citing *Ker v. California*, 374 U.S. 23, 37 (1963)).  In determining whether probable cause exists to support an arrest, the analysis must be based upon the totality of circumstances including "the objective facts available to the officers at the time of the arrest." *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997) (citing *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)).  Subjective intentions of police officers are irrelevant to a Fourth Amendment probable cause analysis.  *Whren v. United States*, 517 U.S. 806, 813 (1996).

It is important to note that "[t]he Constitution also allows officers to reasonably detain and even handcuff [vehicle] occupants without probable cause to protect the officers' safety." *United States v. Seigler*, 484 Fed. App'x 650, 654 (3d Cir. 2012) (citing *Arizona v. Johnson*, 555 U.S. 323, 331-32 (2009); *Brendlin v. California*, 551 U.S. 249, 258 (2007); *United States v. Johnson*, 592 F.3d 442, 447-48 (3d Cir. 2010) ("[P]lacing a suspect in handcuffs while securing a location or conducting an investigation [does not] automatically transform an otherwise valid *Terry* stop into a full-blown arrest.")).

State officials performing discretionary acts enjoy "qualified immunity" from money damages in § 1983 causes of action when their conduct does not violate "clearly established" statutory or constitutional rights of which a "reasonable person" would have known at the time the incident occurred. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The first inquiry under a

qualified immunity analysis is whether the plaintiff has established a violation of a "clearly

established constitutional right" as follows:

> The contours of the right must be sufficiently clear that a
> reasonable official would understand that what he is doing violates
> that right.  This is not to say that an official action is protected by
> qualified immunity unless the very action in question has
> previously been held unlawful, but it is to say that in the light of
> pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted).

The second inquiry concerns the reasonableness of the defendant's actions.  The test for

qualified immunity is based on objective reasonableness, that is, "whether a reasonable officer

could have believed [the challenged action] to be lawful, in light of clearly established law and

the information the [ ] officers possessed." *Giuffre v. Bissell*, 31 F.3d 1241, 1255 (3d Cir. 1994)

(quoting *Anderson,* 483 U.S. at 641).  "The ultimate issue is whether, despite the absence of a

case applying established principles to the same facts, reasonable officers in the defendants'

position at the relevant time could have believed, in light of what was in the decided case law,

that their conduct was lawful." *Giuffre*, 31 F.3d at 1255 (internal quotation omitted).  It is the

defendant's burden to establish that they are entitled to qualified immunity.  *See Stoneking v.

Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989).

In *Saucier v. Katz,* 533 U.S. 194 (2001), the United States Supreme Court clarified the

two-step qualified immunity inquiry.  The Court directed that, in deciding whether a defendant is

protected by qualified immunity, a court first must determine whether, "[t]aken in the light most

favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct

violated a constitutional right." *Id*. at 201.  If the facts do not establish the violation of a

constitutional right, no further inquiry concerning qualified immunity is necessary.  *Id*.  If the

plaintiff's factual allegations do show a violation of his rights, then the court must proceed to

determine whether the right was "clearly established," that is, whether the contours of the right were already delineated with sufficient clarity to make a reasonable officer in the defendant's circumstances aware that what he was doing violated the right. *Id*. at 201-02. Finally, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the United States Supreme Court concluded that while the two-step sequence identified in *Saucier* "is often appropriate, it should no longer be regarded as mandatory." *Id*. at 236.

Here, even though Judge Leskinen dismissed the resisting arrest charge because there was no probable cause to arrest Plaintiff at that point (ECF No. 87-1 at 2), Howard's actions in attempting to handcuff Plaintiff were reasonable under the circumstances and protected by qualified immunity. As averred by Plaintiff, Howard received a warning from Mehalik over the police radio that Plaintiff was dangerous and that Howard should be careful. (ECF No 65 at 3.) Consequently, in an effort to protect himself while completing his duties at the scene, Howard attempted to handcuff Plaintiff. According to the averments of the Amended Complaint, Howard had just placed Ms. Sigwalt in custody after discovering she had an outstanding warrant. Immediately thereafter, he received the warning concerning Plaintiff. Consequently, even though the facts of the Amended Complaint suggest that there was no probable cause to arrest Plaintiff at the time he was initially approached by Howard, the officer did not violate clearly established law when he attempted to handcuff Plaintiff so as to reasonably protect his own safety while securing the scene after Sigwalt's arrest. Therefore, Defendant Howard is protected by qualified immunity as to Plaintiff's claim for false arrest. Hence, Howard's Motion to Dismiss Plaintiff's false arrest claim will be granted. Any attempt to amend as to the false arrest claim would be futile as a matter of law.

<u>Malicious Prosecution</u>

As noted above, Plaintiff also avers that the actions of Broadwater and Howard in issuing false police reports amounted to malicious prosecution.  (ECF No. 65 at 13; ECF No. 82 at 1-3.)[3]

In order to establish a Fourth Amendment malicious prosecution claim pursuant to § 1983, a plaintiff must show the following: 1) the defendant initiated a criminal proceeding; 2) the criminal proceeding ended in the plaintiff's favor; 3) the proceeding was initiated without probable cause; 4)the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).[4]

Here, Plaintiff's averments concerning malicious prosecution are limited to the following:

> Lastly, your plaintiff was nothing less than a victim of Malicious Prosecution with a hoped outcome of grave injury or hopeful death.  With wide spread belief your plaintiff quickly became an intended cop killer with a previous homicide conviction.  This was nothing less than a prescription for death for all whom may have come across your plaintiff to shoot and kill him out of the hyped up dear that your plaintiff was armed and dangerous.  Both news releases said this.

(ECF No. 65 at 13.)  Clearly, Plaintiff's averments of malicious prosecution against Howard and Broadwater have nothing to do with a criminal proceeding.[5]  Therefore, Defendants' Motion to

---

[3] Again, the Court agrees with Defendant Mehalik that Plaintiff avers no facts concerning his involvement in the events that may give rise to the claim for malicious prosecution.  (ECF No. 76 at 15.)

[4] The elements of a state law claim for malicious prosecution are the same but for the fifth element, which is not required to make out a claim for malicious prosecution under Pennsylvania state law.  *Kossler v. Crisanti*, 564 F.3d 181, 186 n.2 (3d Cir. 2009) (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000).

[5] Even if the Court affords Plaintiff's averments their most liberal construction and interprets his malicious prosecution claim as attacking his prosecution for aggravated assault and criminal mischief, Plaintiff's malicious

Dismiss Plaintiff's malicious prosecution claim will be granted. Any attempt to amend will be futile as a matter of law.

Official Capacity Claims

Defendants Mehalik and Howard argue that the claims against them made in their official capacities must be dismissed because they are essentially claims against the entity for which they are employed, and Plaintiff avers no facts to make out a claim of municipal liability. Plaintiff does not respond to this argument.

The law is clear that official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690 n.55 (1978)). Plaintiff, however, avers no facts to make out a claim against these officers' employing entities for municipal liability. That is, Plaintiff avers no facts to suggest that a "policy or custom, whether made by [] lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed Plaintiff's] injury."[6] *Monell*, 436 U.S. at 694. Therefore, the Court will dismiss all official capacity claims against Howard and Mehalik. Any further attempt to amend would be futile as a matter of law.

---

prosecution claim fails as a matter of law because Plaintiff will be unable to show that the criminal proceeding ended in his favor.

[6] In fact, the docket sheet in this case reflects that on August 20, 2012, Luzerne Township, the Pennsylvania State Police, Redstone Township, and the Commonwealth of Pennsylvania were terminated as parties to this action.

<u>Fourth and Fourteenth Amendment Excessive Force claim against Mehalik[7]</u>

First, Defendant Mehalik argues that many of the facts concerning allegations of excessive force occurred prior to his arrival on the scene. Consequently, Mehalik argues that the Motion to Dismiss Plaintiff's excessive force claims should be granted as to those facts for which Mehalik was not present. The Court agrees. A § 1983 defendant must have some personal involvement in the actions giving rise to the complaint. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (civil rights defendant must have personal involvement in alleged wrongdoing; personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence). Here, Plaintiff avers no facts to suggest Mehalik's personal involvement before he arrived on the scene.[8] Hence, Plaintiff's excessive force claim against Mehalik as to any activities that occurred at the scene before his arrival will be dismissed.

Next, as to those facts and circumstances for which Mehalik was present, Mehalik contends that these actions were reasonable because Plaintiff was resisting arrest, and therefore protected by qualified immunity. (ECF No. 76 at 10, 12-15.)

Plaintiff responds that Mehalik used excessive force when he fired gunshots at Plaintiff when he was attempting to flee, even though Plaintiff did nothing to place Mehalik in danger. (ECF No. 82 at 4-10.)

In evaluating a Fourth Amendment excessive force claim, the Court must determine whether the force used to effect a seizure was "reasonable" under the circumstances. *Graham v.*

---

[7] Defendant Howard notes that the excessive force claim, as pled, is not appropriate for disposition at the motion to dismiss stage, although he disputes Plaintiff's allegations regarding the alleged force used in the incident. (ECF No. 80 at 4 n.2.) Hence, Defendant Mehalik is the only movant on the excessive force claim.

[8] Plaintiff only avers that when speaking to Howard on the police car radio, Mehalik warned Howard that Plaintiff was dangerous and to be careful. (ECF No. 65 at 3.)

*Connor,* 490 U.S. 386, 396 (1989). Although not easily defined or mechanically applied, the test for determining whether the force was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396 (citing *Bell v. Wolfish,* 441 U.S. 520, 559 (1979) and *Tennessee v. Garner,* 471 U.S. 1, 8-9 (1985)). The test is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397 (other citations omitted).

Here, Plaintiff has alleged "enough facts to state a claim [for excessive force] that is plausible on its face." *Twombly,* 550 U.S. at 556. Plaintiff avers that as he was attempting to flee the scene, he was subjected to a "barrage of shooting." Plaintiff was not under arrest, he was unarmed, and did not pose an immediate threat to the safety of the officers or others. Hence, Mehalik's Motion to Dismiss as it relates to Plaintiff's Fourth Amendment claim of excessive force concerning the events after Mehalik arrived on the scene will be denied.

Further, the facts as alleged do not demonstrate that Mehalik's conduct was objectively reasonable; that is, whether a reasonable police officer in Mehalik's situation could have believed that his conduct comported with established legal standards regarding the use of excessive force. Discovery may reveal otherwise, but the Court must deny the grant of qualified immunity at this time.

Finally, with regard to Plaintiff's invocation of the Fourteenth Amendment relating to his excessive force claim, the Court notes that in *Graham,* the United States Supreme Court held as follows:

> *[A]ll* claims that law enforcement officers have used excessive
> force- deadly or not-in the course of an arrest, investigatory stop,
> or other "seizure" of a free citizen should be analyzed under the
> Fourth Amendment and its "reasonableness" standard, rather than
> under a substantive due process" approach.  Because the Fourth
> Amendment provides an explicit textual source of constitutional
> protection against this sort of physically intrusive governmental
> conduct, that Amendment, not the more generalized notion of
> "substantive due process," must be the guide for analyzing these
> claims.

490 U.S. at 395 (emphasis in original) (footnote omitted).  Consequently, Plaintiff's claims

against Defendants must be brought under the Fourth Amendment, rather than the Fourteenth.

Therefore, Plaintiff's Fourteenth Amendment excessive force claim will be dismissed.  Any

attempt to amend will be futile as a matter of law.


### Cruel Punishment—Eighth, Fourteenth, and Fifth Amendments

Defendants Howard and Mehalik argue that Plaintiff has failed to plead facts sufficient to

state a plausible claim that he was subjected to "cruel punishment."  Specifically, Defendants

argue that the protections against cruel and unusual punishment are afforded to convicted

prisoners through the Eighth Amendment, and to pretrial detainees through the Fourteenth

Amendment.  Further, Defendants argue that Plaintiff's claim for alleged "acts of cruelty"

pursuant to the Fifth Amendment must likewise be dismissed because the Fifth Amendment only

protects against federal pretrial detainee violations.

The Eighth Amendment provides as follows: "Excessive bail shall not be required, nor

excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

In *Whitley v. Albers,* 475 U.S. 312 (1986), the United States Supreme Court noted that the "Cruel

and Unusual Punishments Clause 'was designed to protect those convicted of crimes,' and

consequently the Clause applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'" 475 U.S. at 318 (*quoting Ingraham v. Wright,* 430 U.S. 651, 664, 671 n.40 (1977) (other citations omitted)). Therefore, the Eighth Amendment has no application to Plaintiff's averments of "cruel punishment." Consequently, Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim will be granted.

The protections of the Fourteenth Amendment against cruel and unusual punishment are directed to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979) (applies Fourteenth Amendment due process principles to pretrial detainees, rather than the cruel and unusual punishment standard of the Eighth Amendment). *Langella v. Cnty. of McKean,* Civ. A. No. 09-cv-311E, 2010 WL 3824222, *13 (W.D. Pa. Sept. 23, 2010) (citing *Hubbard v. Taylor,* 399 F.3d 150 165-66 (3d Cir. 2005)). *See also Montgomery v. Ray,* 145 F. App'x 738, 739-40 (3d Cir. 2005) (vacating an order and remanding case where district court evaluated pretrial detainee's claim involving inadequate medical treatment under the same standards as Eighth Amendment claims). In *Montogmery,* the court of appeals noted its recent decision in *Hubbard,* which clarified the following:

> [T]he Eighth Amendment only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees. While "the due process rights of a [pre-trial detainee] are *at least* as great as the Eighth Amendment protections available to a convicted prisoner," *Hubbard,* 399 F.3d at 166 (citation omitted), the proper standard for examining such claims is the standard set forth in *Bell v. Wolfish, . . . i.e.,* whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt, *Hubbard,* 399 F.3d at 158.

145 F. App'x at 740 (emphasis and brackets in original). Here, Plaintiff's claims for "cruel punishment" do not involve facts or circumstances relating to his status as a pretrial detainee.

Hence, Plaintiff's claims for "cruel punishment" pursuant to the Fourteenth Amendment will also be dismissed.

Finally, Plaintiff's Fifth Amendment claim regarding "cruel punishment" must also fail because it pertains only to federal pre-trial detainees. *Hubbard*, 399 F.3d at 158 n.13.

Any attempt by Plaintiff to amend his claims regarding "cruel punishment" relating to the Eighth, Fourteenth, or Fifth Amendments would be futile as a matter of law.

Punitive Damages

Defendants Howard and Mehalik argue that Plaintiff's claim for punitive damages against them in their official capacities should be dismissed because official capacity claims are really claims against the municipality for which a defendant is employed, and municipalities are immune from punitive damages. (ECF No. 80 at 13; ECF No. 76 at 16.) Plaintiff does not respond to this argument.

It is well settled that municipal entities are immune from punitive damages pursuant to § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). *See also Vermont Agency of Natural Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 784-85 (2000) (holding punitive damages inappropriate in suits against governmental entities); *Bolden v. Southeastern Pa. Transp. Auth.,* 953 F.2d 807, 830 (3d Cir. 1991) (holding municipalities immune from punitive damages under § 1983); *Malone v. Econ. Borough Mun. Auth.*, 669 F. Supp. 2d 582, 612 (W.D. Pa. 2009) ("Section 1983 precludes punitive damages against a municipality."). Based on the nature of § 1983 claims, the immunity from punitive damages would naturally extend to any state or municipal actors sued in their official capacities. As noted above, a "suit against a state official in his or her official capacity is not a suit against the official but rather is a

suit against the official's office." *Will*, 491 U.S. at 71. *See also Brandon v. Holt*, 469 U.S. 464, 471 (1985). Therefore, a suit against a government employee in his or her official capacity is no different than a suit against the governmental entity itself. *Will,* 491 U.S. at 71. Hence, punitive damages are not available against individual municipal actors sued in their official capacity. Therefore, the Court will grant Defendants' Motion to Dismiss as it relates to Plaintiff's claim for punitive damages against the individual Defendants in their official capacities. Any attempt to amend on this issue would be futile as a matter of law.

<u>Plaintiff's Attempt to Raise an Additional Claim in his Responsive Brief</u>

In Plaintiff's Response to Defendants' Motions to Dismiss at ECF No. 82, Plaintiff sets forth averments relating to a claim that is not included in his Amended Complaint. Specifically, Plaintiff states that Defendants Howard and Mehalik conspired to falsify their statements that Plaintiff rammed Mehalik's police car. (ECF No. 82 at 5.) Plaintiff attaches trial transcript excerpts from two trial witnesses and a hand written document that appears to be written by Plaintiff, setting forth the statement of Rae Lynn Sigwalt. Plaintiff contends that these documents demonstrate that it was Mehalik that rammed the Plaintiff's car. Consequently, Plaintiff contends that Howard and Mehalik conspired to falsify their version of events, and that such conspiracy constitutes "a fabrication of false evidence and conspiracy as well as cruel punishment." (ECF No. 82 at 5.)

Any attempt by Plaintiff to include these new averments as part of this civil action would be futile as a matter of law. This Court is bound by the jury's findings in the Court of Common Pleas of Fayette County, Criminal Division, where a jury found Plaintiff guilty of aggravated assault, simple assault and criminal mischief.

The Full Faith and Credit Act provides as follows:

> The records and judicial proceedings of any court of any such State, Territory or Possession . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738. In other words, it requires "federal courts to give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment." *Minnick v. City of Duquesne*, 65 F. App'x 417, 420 (3d Cir. 2003) (quoting *McDonald v. City of West Branch*, 466 U.S. 284, 287 (1984)). "The federal court, in determining the collateral estoppel effect of a state court proceeding, should apply the law of the state where the criminal proceeding took place. . . . ." *Grier v. Scorpine*, No. 04-1888, 2008 WL 655865, at *5 n.1 (W.D. Pa. 2008) (quoting *Anela v. City of Wildwood,* 790 F.2d 1063, 1068 (3d Cir. 1986)).

Here, the jury convicted Thompson of aggravated assault, simple assault, and criminal mischief. 18 Pa. Cons. Stat. Ann. § 2702 (a)(1) provides that a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to [a police officer], or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." In his Order of October 2, 2009 on pretrial motion, Judge Leskinen stated that "Thompson intentionally drove the car directly into the side of the other officer's patrol vehicle, another action he was not privileged to do, causing substantial damage and endangering the officer in the car." (ECF No. 65-1 at 3.) Judge Leskinen indicated that the basis for the aggravated assault charge was the fact that "[Plaintiff] placed the other officer in danger of serious bodily injury or death." (ECF No. 65-1 at 4.) 18 Pa. Cons. Stat. Ann. § 3304(a) (2) provides that a person is guilty of criminal mischief if he "intentionally or recklessly tampers with tangible property of another so as to endanger person or property." Judge Leskinen

indicated that the basis for this charge was the fact that "the vehicle [Plaintiff] was driving caused approximately $1,000.00 in damage to the police vehicle." (ECF No. 65-1 at 4.) The jury convicted Plaintiff of these charges on August 4, 2010. "Operative facts necessary for criminal convictions are admissible as conclusive facts in civil suits arising from the same events and circumstances." *DiJoseph v. Vuotto*, 968 F. Supp. 244, 247 (E.D. Pa. 1997) (citing *Folino v. Young*, 568 A.2d 171, 172 (Pa. 1990)). In Pennsylvania, "it is well established that a criminal conviction collaterally estops a defendant from denying his acts in a subsequent civil trial." *Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996). Therefore, under Pennsylvania law, the facts underlying Plaintiff's jury trial conviction for aggravated assault and criminal mischief are conclusive and may not be disputed. Hence, Plaintiff may not attempt to raise this new claim in his responsive brief because an attempt to amend his complaint to include the claim would be futile as a matter of law.

CONCLUSION

For the above reasons, Defendants' Motions to Dismiss at ECF Nos. 73, 75 and 79 will be granted except for Mehalik's motion at ECF No. 75 as it relates to Plaintiff's claim for excessive force relating to those events after Mehalik arrived on the scene.

An appropriate order will follow.

Dated: May 29, 2013

s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc: All counsel of record
    Via electronic filing

    James S.Thompson
    JS-4542
    S.C.I. Dallas
    1000 Follies Road
    Dallas, PA  18612